**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

GREG GROUNDS                                                                                  **PLAINTIFF**

VS.                                              **4:21-CV-00115-BRW**

**CITY OF LITTLE ROCK**                                                            **DEFENDANT**

<u>**ORDER**</u>

Pending is Defendant's Motion for Summary Judgment (Doc. No. 14).  Plaintiff has responded and Defendant has replied.[1]  For the reasons stated below, the motion is GRANTED.

**I.        BACKGROUND**[2]

On August 11, 2015, Defendant hired Plaintiff as an Electrical Inspector.  Plaintiff's schedule was from 7:00 am to 3:30 p.m. with a 30-minute lunch break.  On June 11, 2018, Plaintiff was promoted to an Electrical Inspector Supervisor and held  that position until his termination on October 20, 2020.  Plaintiff alleges that he worked more than 40 hours per week when he assumed the inspector supervisor responsibilities, but was never paid for the overtime.

During his employment, Plaintiff, who was responsible for recording his hours, submitted signed timesheets to his supervisor every other week that indicated he worked 40 hours a week.  None of the timesheets show anything other than Plaintiff working a 40 hour work week.  Additionally, Plaintiff signed and submitted documents stating he worked 40 hours per week and listed his duty hours from 7:00 a.m. to 3:30 p.m.  However, Plaintiff alleges that the timesheets do not reflect his actual time worked.  Plaintiff contends that his supervisor instructed him to not include overtime hours on his timesheets and that he was confused about his status as an hourly or salary worker.

---

[1]Doc. Nos. 20, 22.

[2]Unless otherwise noted, the Background is from the concise statements of undisputed material facts (Doc. Nos. 15, 21).

On February 12, 2021, Plaintiff filed his original Complaint.[3]  On April 5, 2021, Plaintiff filed an Amended Complaint[4] alleging Defendant violated the Fair Labor Standards Act ("FLSA")[5] and the Arkansas Minimum Wage Act ("AMWA").[6]  Plaintiff asserts that Defendant failed to pay him overtime for work performed.[7]  He  seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorneys' fee and costs as a result of Defendant's alleged failure to pay proper overtime compensation.[8]

In the pending motion for summary judgment,  Defendant contend Plaintiff's self-serving testimony fails to support of his claim.[9]  Defendant argues that Plaintiff cannot establish that he performed work that he was not paid for as a matter of just and reasonable inference.[10]  I agree.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]  However, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[12]  It is important to understand that "[t]he

---

[3]Doc. No. 1.

[4]Doc. No. 7.

[5]29 U.S.C. § 201 *et seq.*

[6]Ark. Code Ann. § 11–4–201 *et seq.*

[7]Doc. No 7.

[8]*Id.*

[9]Doc. No. 14.

[10]*Id.*

[11]Fed. R. Civ. P. 56(a).

[12]*Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

mere existence of a factual dispute is insufficient alone to bar summary judgment."[13]  To prevent summary judgment, the dispute of fact must be both genuine and material.[14]  A genuine dispute of fact exists where a rational jury could decide the particular question of fact for either party.[15]  A material dispute of fact exists where the jury's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[16]

The moving party has the burden of showing that (1) there is an absence of a genuine dispute of material fact on at least one essential element of the nonmoving party's case and (2) the absence means that a rational juror could not possibly find for the nonmoving party on that essential element of the nonmoving party's case.[17]  If the moving party meets that burden, the burden then shifts to the nonmoving party to show that there is a genuine dispute of material fact.[18]  The nonmoving party meets this burden by designating specific facts in affidavits, depositions, answers to interrogatories, admissions, or other record evidence that shows "there is a genuine issue for trial."[19]  I must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences.[20]

---

[13]*Holloway v. Pigma*n, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

[14]*Id.*

[15]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16]*Id.*

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[18]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[19]*Celotex Corp.*, 477 U.S. at 322-24.

[20]*Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

## III.    DISCUSSION

The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times an employee's regular rate for all hours worked more than 40 hours in a week.[21]   The parties do not dispute that Plaintiff was a  non-exempt, even though Plaintiff contends he was confused about his status during his employment.   If an employee is non-exempt, the employee must be compensated for duties "before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity."[22]   In other words, an employer must pay a non-exempt employee for hours worked that the employer has actual or constructive knowledge of.

The constructive-knowledge rule requires an employer to use  reasonable diligence to determine whether its employees are working more than their scheduled hours.[23]   The FLSA requires employers to keep records of the number of hours worked each day and a total of the number of hours worked each week by each employee.[24]   However, access to records indicating that an employee was working overtime is not necessarily sufficient to establish that the employer had constructive knowledge.[25]   "The FLSA's standard for constructive knowledge in the overtime context is whether the [employer] should have known, not whether it could have known."[26]

---

[21]29 U.S.C. § 207(a)(1).

[22]*Hertz v. Woodbury Cnty, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009).

[23]*Shaunpen Zhou v. Intern. Bus. Machines Corp*., Case No. 15-cv-1027-LRR, 2017 WL 1217195, 17 (N.D. Iowa Mar. 31, 2017) (citing *Hertz*, 566 F.3d at 781).

[24]29 U.S.C. § 211(c).

[25]*Hertz*, 566 F.3d at 781-82.

[26]*Id.* at 782.

If an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process.[27]   However, courts have found that an employer's formal policy for reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting of overtime in practice.[28]

Under the FLSA, the burden is on Plaintiff to prove he performed work for which he was not paid.[29]  If Defendant's time records are inaccurate or inadequate, Plaintiff must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[30]

Plaintiff can satisfy this  burden in different ways, including records and testimony.[31]  However, relying "mainly just [on] recollections of [his] daily activities" does not suffice—at least where those recollections are general and vague.[32]  Plaintiff must provide a meaningful and consistent explanation for his estimate of hours worked that includes "details which would allow a jury to determine" that he worked the claimed overtime.[33]  He has not.  Defendant provided detailed records of his work time.[34]  Plaintiff says that he worked time that was not recorded at

[27]*Cage v. Multiband, Inc.*, Case No. 1:12-cv-87 SNLJ, 2015 WL 687120, at 10 (E.D. Mo. Feb. 18, 2015); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1192 (D. Minn. 2015).

[28]*Allen v. City of Chi.*, 865 F.3d 936, 939 (7th Cir. 2017).

[29]*Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 687 (1946).

[30]*Id.* at 687.

[31]See *Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975).

[32]*Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1058 (8th Cir. 2014).

[33]*Id.* at 1060. If the employee can meet her burden, then the burden shifts to the employer to put forth evidence of the precise amount of work by the employee that negates the "reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.

[34]Doc. No. 14-1, pp. 13-95.

all. However, he doesn't back these allegations up with any specific dates, supporting documents, or other corroborating information.

Plaintiff's testimony regarding his alleged work hours is general and vague.  Plaintiff asserts that he worked 10 hours everyday from around the time he was promoted to the supervisor position until his termination.[35]  Plaintiff contends that he would "come in at 6:00 and would leave around 4:00 to 4:30," but he could not remember any exact dates.[36]  Further, he failed to describe any specific work performed while allegedly working overtime.  Instead, he provides a general estimate of 30 inspections a day at 15 to 20 minutes per inspection.[37]  Plaintiff's estimate provides a range of 7.5 to 10 hours a day, which is inconsistent with his overtime claim of 10 hours everyday.

Plaintiff says that his "co-workers could testify as to his start and end times each day," which he argues creates a factual dispute that should defeat the motion for summary judgment.[38]  However, Plaintiff failed to depose these witnesses or provide any affidavits from them that support his testimony.  That failure prevents the potential testimony from creating genuine issue of material fact as to whether Plaintiff worked over 40 hours in any work week.[39]  At this point, Plaintiffs' burden is to meet proof with proof, not make general references to what co-workers might testify to regarding hours.[40]

---

[35]Doc. No. 20, p. 9.

[36]Doc. No. 14-2, p. 53.

[37]*Id.* at 25, 35.

[38]Doc. No. 20, p.2.

[39]Fed. R. Civ. P. 56(e).

[40]*Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016) (holding that the non-moving party "is obligated to meet proof with proof at the summary-judgment stage").

Furthermore, Plaintiff was responsible for recording and submitting his own time. Defendant provided a report of Plaintiff's weekly work hours.[41]  He concedes that he filled out these timesheets showing 40 hours worked per week.  It is undisputed that Plaintiff did not request approval for any overtime hours, submit the overtime hours to Defendant, or file any grievance about working overtime.[42]

Plaintiff gives different reasons that he did not request or record any overtime hours. Neither seem plausible.  First, he claims his supervisors told him that he was not allowed to submit over-time and he didn't care about his hours "as long as [the job] got done."[43]  Second, Plaintiff points to the language in his job description that he claims is confusing concerning his status as non-exempt.

Plaintiff alleges that his supervisor Chuck Givens told him he was a salary employee who was ineligible for overtime, but he also asserts that Mr. Givens directed him to stop working overtime, and implied that he would "make it up to him" at some point with additional time off.[44] So, Plaintiff contends his supervisor advised him that his job position didn't allow for overtime, yet also told him to stop working overtime, and agreed to compensate later for the overtime. Plaintiff testified that the situation "never made no sense to me."[45]  I agree.  It does not.

Defendant's job description for an Electrical Inspection Supervisor specifically states that the job is "Non-Exempt".[46]  Nothing in that language is unclear.  Plaintiff also admits to completing hourly timesheets for years in this position and signing documentation indicating that

---

[41]Doc. No. 21-1.

[42]Doc. No. 20, p. 15.

[43]Doc. No. 14-3, p. 39.

[44]*Id.* at 30.

[45]*Id.* at 39.

[46]Doc. No. 20, p. 4.

he was an hourly employee.  Further, Plaintiff testified he had worked as an hourly employee in several previous jobs.[47]  His own testimony shows he knew the difference in the type of positions.  It is inconceivable that Plaintiff did not know he was an hourly employee.

Plaintiff contends that Defendant's timesheets are not accurate and should be disregarded.  He alleges that Mr. Givens instructed him to write random start times to create an illusion that the times were real.  Mr. Given's testified that he demanded the inspectors "write the exact time on their timesheets, down to the minute, however, Plaintiff and others refused."[48]  Plaintiff admits that Mr. Givens asked him and others to "put in 7:05, 7:20, do different things, lunches at 7:15--or -- 1l:15 or 11:00."[49]  Plaintiff says that he and the others "bucked them" and decided to "keep it the same."[50]  So, whatever errors might be on the timesheets, Plaintiff and his co-workers are at least partially responsible.  Additionally, nothing in Plaintiff's testimony concerning this issue supports his allegations that he started work at 6 a.m. everyday.  All of the proposed clock-in times in Plaintiff's testimony occurred after 7 a.m.

Even if Plaintiff had established that he performed overtime work for which he was not paid, he has not established that Defendant had actual or constructive knowledge of any work.[51]  As noted above, Plaintiff did not follow Defendant's established procedure to report overtime hours.  Plaintiff admits he never recorded any of the overtime hours he allegedly worked, and never requested overtime by completing the necessary forms.  In fact, Plaintiff admits he purposely submitted inaccurate timesheets after he was instructed otherwise.  Plaintiff's own

---

[47]Doc. No. 14-3, p. 41.

[48]Doc. No. 14-1.

[49]Doc. No. 14-3, p. 28.

[50]*Id.*

[51]See *Rapp v. Network of Cmty. Options, Inc.*, 3 F.4th 1084, 1088 (8th Cir. 2021).

actions prevented Defendant from having actual or constructive knowledge of any undocumented time he may have worked.

Plaintiff has failed to provide evidence from which a jury could rationally conclude that he worked over forty hours a week and reasonably determine the amount and the extent of his overtime work as a matter of just and reasonable inference.[52]  While it is true that, as a general matter, a plaintiff's testimony alone can supply the necessary evidence to survive summary judgment, here, Plaintiff's testimony is too vague, too general, contradictory, and unsupported by any evidence.[53]

The AMWA  and FLSA provide the same overtime requirements, and are interpreted similarly.[54]  Therefore, Plaintiff's AMWA claim fails for the same reasons as his FLSA claims.

Accordingly, I find that no genuine issues of material fact exist.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 14) is hereby, GRANTED.  Plaintiff's claims are dismissed with prejudice. Judgment will be entered for Defendant.

IT IS SO ORDERED this 15th day of February, 2022.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[52]*Holaway*, 771 F.3d at 1060.

[53]*Id.* at 1059-60.

[54]See *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011).